IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CT-3193-F

| | | |
|---|---|---|
| ISRAEL BEN-LEVI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CHAPLAIN BETTY BROWN, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on: (1) Plaintiff's motion to appoint counsel [DE-36]; (2) Defendant's motion for summary judgment [DE-42]; and (3) Defendant's motion for a protective order [DE-50]. For the following reasons: (1) Plaintiff's motion to appoint counsel [DE-36] is DENIED; (2) Defendant's motion for summary judgment [DE-42] is ALLOWED; and (3) Defendant's motion for a protective order [DE-50] is DENIED AS MOOT.

## I. PROCEDURAL BACKGROUND

On October 4, 2012, Plaintiff, an inmate in the custody of the North Carolina Department of Public Safety ("DPS") proceeding pro se, filed this action under 42 U.S.C. § 1983, alleging violations of his constitutional rights while he was housed at Hoke Correction Institution ("Hoke")[1]. Compl. [DE-1]. Specifically, Plaintiff contends that Defendant violated his rights under the First Amendment of the United States Constitution, and also violated the Religious Land Use and Institutional Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc et seq. Id. ¶ 10.

---

[1] Plaintiff is no longer incarcerated at Hoke and is currently housed at Alexander Correctional Institution ("Alexander") [DE-45].

Defendant filed a motion to dismiss on July 30, 2013 [DE-23]. The court advised the parties on February 25, 2014 [DE-30] that it intended to construe Defendant's motion to dismiss as one seeking summary judgment, and Plaintiff was afforded additional time to respond. Plaintiff filed a response to the motion for summary judgment on March 7, 2014 [DE-32]. On March 19, 2014, the court allowed in part and denied in part Defendant's motion for summary judgment. Specifically, Plaintiff's RLUIPA claim, as well as his request for declaratory and injunctive relief pursuant to § 1983, was dismissed. March 19, 2014 Order [DE-33]. at pp. 5-6. Plaintiff's claim for monetary damages pursuant to § 1983 survived summary judgment. Id. In so ruling, the court noted "that there remains a material issue of fact as to whether Defendant's actions substantially burden Plaintiff's religious exercise and whether Defendant's actions are reasonably related to legitimate penological interests." Id. at p. 4. However, the court also noted that it would reconsider the issue "[o]n a more fully developed record." Id. at p. 5.

Plaintiff filed the instant motion requesting the appointment of counsel on April 15, 2014 [DE-36]. On September 2, 2014, Defendant filed the instant renewed motion for summary judgment [DE-42]. Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) (per curiam), the court notified Plaintiff about the motion for summary judgment, the consequences of failing to respond, and the response deadlines [DE-44]. Plaintiff filed a response on October 14, 2014 [DE-49], Defendant filed a reply on November 3, 2014 [DE-52], and Plaintiff filed a sur-reply on November 12, 2014 [DE-54]. Finally, Defendant filed the instant motion for a protective order on October 30, 2014 [DE-50]. These matters are now ripe for adjudication.

## II. MOTION TO APPOINT COUNSEL

Plaintiff filed his first motion requesting the appointment of counsel on October 3, 2012 [DE-

2

.

3], which was denied on April 3, 2013 [DE-12]. He now renews his request for counsel [DE-36]. There is no constitutional right to counsel in civil cases, and courts should exercise their discretion to appoint counsel for pro se civil litigants "only in exceptional cases." Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). The existence of exceptional circumstances justifying appointment of counsel depends upon "the type and complexity of the case, and the abilities of the individuals bringing it." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa, 490 U.S. 296 (1989) (quoting Branch v. Cole, 686 F.2d 264 (5th Cir. 1982)); see also Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978) ("If it is apparent . . . that a pro se litigant has a colorable claim but lacks capacity to present it, the district court should appoint counsel to assist him."). Plaintiff's claims are not particularly complex, nor do other exceptional circumstances exist. Furthermore, Plaintiff has demonstrated through his filings that he is capable of proceeding pro se. Finally, Plaintiff has not forwarded any additional evidence or argument to distinguish the instant motion from his prior request for the appointment of counsel [DE-3]. Therefore, Plaintiff's motion to appoint counsel [DE-36] is DENIED.

## III. MOTION FOR SUMMARY JUDGMENT

### A. Standard of review

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading,

3

Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

**B. Discussion**

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. amend. I. However, a prisoner does not enjoy the full range of freedoms as those not incarcerated. Rather, state action violates a prisoner's religious rights if it burdens his constitutional rights and is not reasonably related to a legitimate penological interest. Turner v. Safley, 482 U.S. 78, 89 (1987); see O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987). A prisoner asserting a violation of his Free Exercise rights must show that he sincerely holds his religious beliefs. See Hines v. S.C. Dep't of Corr., 148 F.3d 353, 358 (4th Cir. 1998). He also must show that the actions of which he complains substantially burden his religious exercise and the actions are not reasonably related to legitimate penological interests. See O'Lone, 482 U.S. at 349; Hines, 148 F.3d at 358.

In evaluating a prisoner's claim that a prison policy violates his First Amendment rights, the court must evaluate four factors to determine whether the policy is reasonably related to a legitimate penological interest. See Turner, 482 U.S. at 89-90.

> First, is there a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it? Second, are there alternative means of exercising the right that remain open to prison inmates? Third, what impact will accommodation of the asserted constitutional right . . . have on

4

guards and other inmates, and on the allocation of prison resources generally? And, fourth, are ready alternatives for furthering the governmental interest available?

Beard v. Banks, 548 U.S. 521, 529 (2006) (internal citations and quotations omitted); see Morrison v. Garraghty, 239 F.3d 648, 655 (4th Cir. 2001). With regard to the appropriate balancing of these factors, the Supreme Court has stated "that evaluation of penological objectives is committed to the considered judgment of prison administrators, who are actually charged with and trained in the running of the particular institution under examination." O'Lone, 482 U.S. at 349 (quotations omitted).

Here, Plaintiff claims that Defendant, as Director of Chaplaincy Services, refused to authorize him access to a quiet room for a Jewish Bible study, despite inmates practicing other faiths being afforded similar privileges. Compl. [DE-1], pp. 3-4. Specifically, on June 24, 2012, Plaintiff wrote Defendant, asking if she had "the authority to let the superintendent [at Hoke] approve a quiet place, as do all other religions here . . . to have a Jewish Bible Study, as there are two of us here." Compl. [DE-1-1], p. 4. Defendant denied Plaintiff's request on July 10, 2012. Brown Aff. [DE-42-2] ¶ 19. In doing so, Defendant stated that "no orthodox Rabbi currently serves as volunteer [at Hoke]. Without an orthodox volunteer to supervise a study group, no formal authorization can be given." Id.[2] On August 6, 2012, the superintendent at Hoke also responded to Plaintiff's request, stating DPS would "attempt to transfer [Plaintiff] to a facility with sufficient practitioners of [Plaintiff's] faith to hold corporate worship." Pl. Documents in Support [DE-6-1], p. 5. Plaintiff has since been transferred from Hoke to Alexander [DE-45].

---

[2] To this end, Defendant "regularly conduct[ed] community outreach among the various churches and denominations in search of volunteers to aid and assist with prison ministry," and was nonetheless still unable to locate a volunteer Rabbi for Hoke. Brown Aff. [DE-42-2] ¶ 28.

5

In general, DPS policy permits regular population inmates to attend any corporate worship service held at a facility. Brown Aff. [DE-42-2] ¶ 6. In addition, "any inmate may privately pray, meditate, and study scriptures or religious literature in his or her cell or other designated area as long as the inmate does not interfere with other inmate(s) . . . security or operational management." Id. ¶ 7. Likewise, "[a]n inmate may request a community religious official to perform . . . religious rites/rituals subject to [DPS] policies regarding visitation and after coordination with the facility chaplain or other designated staff and approval of the facility head." Id. ¶ 10.

However, DPS policy prohibits any inmate exercising religious authority over any other inmate. Id. ¶ 11. Accordingly, "[n]o inmate shall be recognize[d] as clergy . . . and shall not be permitted to function as such." Id. To the extent inmates seek to conduct religious group meetings, "[t]he Chaplaincy Service Central office shall provide technical support and assistance in the recommendation of inmate leadership for non-Christian faith groups." Id.[3] Group meeting are not permitted without prior approval. Id. Defendant notes that, with regard to any religious group meeting, "different accommodations are made for dissimilar groups." Id. ¶ 16. For example, "[w]hile some faith practices may require corporate group worships, others may not." Id. Pursuant to these guidelines, a Jewish Bible Study generally requires a quorum of ten adult Jews. Id. ¶ 14. This requirement may be waived when the study is led by a volunteer Rabbi. Id.

In contrast to her prior motion for summary judgment, Defendant now identifies several legitimate governmental interests justifying these policies, including: (1) maintaining order, security, and safety; (2) balancing inmate relationships; (3) coordinating the availability of staff, departmental

---

[3] To this end, Defendant contends that Plaintiff is not qualified to conduct a Jewish Bible Study. Brown Aff. [DE-42-2] ¶ 20.

6

and community resources; and (4) avoiding the duplication of existing services. Id. ¶ 20. Defendant also specifically notes that "[r]eligion in the prison system has been used as a means to engage in gang activities and for the promotion of extremist groups." Id. Specifically, "in early 2010 . . . a small group of self-declared Messianic Jewish inmates in prisons in the Western part of the state were White Supremacists, were using the faith practice to mask their gang activity, including recruitment and indoctrination." Id.

Based on the more fully developed record, the court concludes that Defendant did not substantially burden Plaintiff's religious exercise. Adkins v. Kaspar, 393 F.3d 559, 571 (5th Cir. 2004) ("The requirement of an outside volunteer . . . does not place a substantial burden on [a plaintiff's] religious exercise"). Plaintiff is permitted to participate in private and corporate worship. Brown Aff. [DE-42-2] ¶¶ 6-10. Defendant did not forbid Plaintiff from participating in a Jewish Bible Study. Rather, she enforced DPS policy requiring that a study with fewer than ten participants be led by a Rabbi. Id. ¶¶ 14, 20, 24-26, 28. Ultimately, DPS officials attempted to transfer Plaintiff to a facility with a volunteer Rabbi. Pl. Documents in Support [DE-6-1], p. 5.

Morever, even if Plaintiff had demonstrated a burden on his religious exercise, Defendant's actions were reasonably related to legitimate penological interests. As noted by Defendant, any "request to have a quiet area to conduct a 'Jewish Bible study,' or a Torah/Talmud study, without supervision, can compromise order, security, operation, safety, and inmate relationships in the prison system." Brown Aff. [DE-42-2] ¶ 22. Furthermore, as discussed above, Defendant has cited specific examples of extremist groups "using . . . faith practice to mask their gang activity." Id. ¶ 20. Thus, the requirement of a quorum of ten adult Jews or the presence of a Rabbi is a policy that is reasonably related to legitimate government interests. See Griffith v. Bird, No. 3:06CV308-1-MU,

7

2009 WL 3722804, at *4 (W.D.N.C. Nov. 3, 2009) ("[T]he prison policy of requiring an approved volunteer to oversee religious gatherings . . . is rationally related to the legitimate governmental interest of institutional order and security"). For example, said policy: (1) "ensures the purity of the doctrinal message and teaching"; (2) "promotes institutional security [by] ensur[ing] that groups and services are not co-opted by gangs or other groups which might use it to mask their illicit activities"; (3) "ensures that no one inmate assumes a position of power and authority vis-a-vis another"; and (4) "conserves personnel resources." Brown Aff. [DE-42-2] ¶ 26.

Finally, even if the Turner factors were not satisfied, Plaintiff's Free Exercise claim still fails because he cannot establish that Defendant intentionally violated his Free Exercise rights. See Lovelace v. Lee, 472 F.3d 174, 201 (4th Cir.2006) (only intentional conduct is actionable under the Free Exercise Clause); Griffith, No. 3:06CV308-1-MU, 2009 WL 3722804, at *4 (dismissing Free Exercise claim because, *inter alia*, that plaintiff had "not established that either Defendant acted intentionally to deprive him of his rights under the Free Exercise Clause of the First Amendment"). For these reasons, Plaintiff's claim is DISMISSED.

8

## III. CONCLUSION

For the aforementioned reasons: (1) Plaintiff's motion to appoint counsel [DE-36] is DENIED; (2) Defendant's motion for summary judgment [DE-42] is ALLOWED; and (3) Defendant's motion for a protective order [DE-50] is DENIED AS MOOT. The Clerk of Court is DIRECTED to close this case.

SO ORDERED. This the 18 day of December, 2014.

_James C. Fox_
JAMES C. FOX
Senior United States District Judge

9